James P. MITCHELL, Secretary of Labor, United States Department of Labor, Appellant,

v.

HOOPER CONSTRUCTION COMPANY, Inc., and Clemens Construction Company, Appellees.

No. 17268.

United States Court of Appeals Fifth Circuit.

April 1, 1959.

Bessie Margolin, Asst. Solicitor, Dept. of Labor, Washington, D. C., Stuart Rothman, Solicitor, Dept. of Labor, Washington, D. C., Sylvia S. Ellison, Beate Bloch, Attorneys, United States Department of Labor, Washington, D. C., Beverley R. Worrell, Regional Attorney, Birmingham, Ala., for appellant.

Robert M. Brake, Coral Gables, Fla., Turner, Hendrick, Fascell & Brake, Coral Gables, Fla., for appellee Hooper Const. Co., Inc.

R. D. Maxwell, Jr., H. Barrow Cagle, Miami, Fla., for Clemens Const. Co.

Before RIVES and TUTTLE, Circuit Judges, and SIMPSON, District Judge.

PER CURIAM.

In this appeal from a dismissal by the trial court of appellant's Wage and Hour injunction suit, the Secretary of Labor complains, among other things, of the failure of the trial court to permit the proper development of his case by the introduction of relevant evidence.

A reading of the record demonstrates so clearly the validity of appellant's contention that we do not now get to the merits of the appeal. The trial commenced with an attempt by Government counsel to outline his case. It immediately turned into a colloquy between the court and counsel.[1]

---

1. In addition to adverse rulings on specific items of proffered testimony made on the court's incorrect conclusion that proof of connection with instrumentalities of interstate commerce was inadmissible, it is clear that the court indicated such a strong preconception of the issues and their proper solution as to deprive appellant of a full and fair trial. This can best be demonstrated by quotation of the proceedings at the start of the trial:

"The Court: I will ask you first, do you claim that the defendants here were engaged in interstate commerce or the production of goods for commerce?

"Mr. Neilson: Yes, your Honor; both.

"The Court: Claim both?

"Mr. Neilson: Yes, your Honor, it will be both; that they were both subject to the Act, either of which would be sufficient to bring them under the Act. We allege both in our more definite statement.

"The Court: What goods did they produce and what business did they engage in in the production of goods for commerce?

"Mr. Neilson: Your Honor, there is a vast agricultural area south of Lake Okeechobee. Perhaps the most convenient thing now would be to bring the maps out so that your Honor—

"The Court: I do not want to look at any maps.

"Mr. Neilson: Very well.

"The Court: I want to know what they did.

"Mr. Neilson: Specifically, what the defendant, Hooper Construction Company did?

"The Court: What did the construction company do?

"Mr. Neilson: Hooper Construction Company?

"The Court: Did they engage in drainage projects?

"Mr. Neilson: They built Levees 2 and 3. There was a contract for the construction of Levee 2 and Levee 3 of the Florida Flood Control—Central and Southern Florida Flood Control Project.

"The Court: You say that because they did that and some farmer's land was converted into farming land and they raised a few turnips or something of that nature, that the defendant engaged in commerce? Is that what you are saying?

"Mr. Neilson: If your Honor please, I would like to go forward with my statement. It is a rather elaborate thing. We could read the pleadings—

"The Court: Well, isn't that the substance of it?

"Mr. Neilson: Well, it is not a matter of a few turnips. There is a very vast—

"The Court: Well, I say turnips, oranges, apples, peanuts and whatever else; isn't that what you claim? Isn't that what you claim in effect, I mean?

"Mr. Neilson: That is one of our contentions.

"The Court: What is the other?

"Mr. Neilson: We not only—and if your Honor will let me state—you asked what others?

"The Court: If you would answer my question we will save a lot of time. I want to know what else.

"Mr. Neilson: We say that in addition to the production of goods for interstate commerce, which would not only be as a result of farming, which is aided there, and the farming and production of sugar which occurs in this area—

"The Court: Well, that is the same as turnips so far as that is concerned. They ship them?

"Mr. Neilson: We say that the Flood Control Project will help protect this area from salt water infiltration and intrusion and that will help the manufacturing plants. A lot of plants in this area have their own water systems and they go down—

"The Court: Have you got any cases on that?

"Mr. Neilson: Well, your Honor, we have a number of cases that we expect to cite to you, some that are very close in point.

"The Court: I did not ask you that. Have you any cases about this flood control business?

"Mr. Neilson: This is the first case that we know of. These are the first cases ever filed involving flood control projects.

"The Court: And you are making me a guinea pig?

"Mr. Neilson: No, your Honor, we are presenting the cases here so that your Honor will have an opportunity to give a ruling on the law.

"The Court: Well, I am about ready to give it to you now. I cannot see how that is the production of goods for commerce, if that is all you have got. I am inclined to direct a verdict for the defendant on your opening statement.

"Mr. Neilson: Well, I am not through with my opening statement, your Honor.

"The Court: Well, go ahead then.

"Mr. Neilson: Your Honor asked what did they do. Hooper Construction Company constructed Levees 2 and 3; Clemens Construction Company constructed Levee 14. We will show later in the testimony where they are located.

"The Court: What has that got to do with it?

"Mr. Neilson: We will show further that in addition—

"The Court: Give me the pertinent facts. Give me the pertinent facts and that is all I am interested in.

"Mr. Neilson: Your Honor, it is sometime hard to be sure which facts are pertinent and which are not pertinent.

"The Court: Well, I do not see how it could be pertinent because one constructed one levee and another constructed another levee when the effect, you say, is the same.

"Mr. Neilson: I just wanted to cover what both defendants did. Now, the work of both of them in a general way is the same. Their work will help pro-

Before counsel was permitted to state either of his two theories of coverage the court announced:

"I am inclined to direct a verdict for the defendant on your opening statement."

And still before completion of the statement:

"There is not any case for an injunction. * * * I have practically decided the case against you."

tect the Everglades and coastal areas of Florida from flooding. It will help to protect the coastal area and the Everglades area of Florida from drought. Drought has sometimes been fully as serious as flooding. We expect to show among other things that when this flood control—that the flood control project already has prevent [sic] flooding of interstate airports and protected interstate highways and railroads. We expect to show further that the flood control project is tied in with the Okeechobee Waterway. The Okeechobee Waterway is a method—

"The Court: Well, all that is covered by the simple statement I made first. What you say is this: you said these two companies were engaged in flood control operations which brought land that was not suitable for farming into use and made it suitable for farming and on those lands they shipped fruits, or whatever they grew, and shipped things in interstate commerce; isn't that the case?

"Mr. Neilson: Not alone, your Honor.

"The Court: Well, what else?

"Mr. Neilson: Well, for one thing, some of those lands were already fairly suitable,—

"The Court: Well, you say that some are suitable and some are not suitable and some were made more suitable. What is the difference? It made them more suitable because they constructed the levees and made land more suitable to cultivate farm products to be shipped in commerce and then these contractors are in interstate commerce or engaged in the production of goods for commerce?

"Mr. Neilson: That is one item, your Honor.

"The Court: What is the other item?

"Mr. Neilson: Another thing is the protection of the airports used for interstate and foreign commerce.

"The Court: You mean, the drainage protected the airports?

"Mr. Neilson: From flooding. The program when completed will give considerable protection to the Miami area

And before counsel had stated his theory for coverage on the ground that defendants were engaged in commerce, the court said:

"All you are doing is just repeating. Go ahead with your testimony. I will hear that. But I do not think that you have got much of a case."

Thereafter, the court too greatly circumscribed the appellant in questioning witnesses as to the manner in which the

and to the Miami International Airport where, your Honor, comes in by plane and goes out by plane.

"The Court: Well, that would not influence me because I am liable to be flooded and get my feet wet when I come in, I do not see where you have any case. I will be fair with you.

"Mr. Neilson: Let me go ahead, if your Honor please. If your Honor will bear with me—

"The Court: I already understand your case. You had better just go ahead. You had better just go ahead with your testimony. I will hear the testimony. I do not think you have much of a case.

"Mr. Neilson: I hate to hear your Honor say that.

"The Court: There is not any case for an injunction. How in the world would any contractor be subject to the Fair Labor Standards Act [29 U.S.C.A. § 201 et seq.] in the construction of a project like this? It is like the fellow up in Greenville where a man built a quarter of a mile extension of a sewer pipe and because in the City of Greenville this sewer went to the Southern Railroad Depot, and because this man built his little sewer pipe, he was engaged in interstate commerce. I do not see how the Constitution of the United States ever intended that such a proposition would be in interstate commerce. That is practically your case. I have practically decided the case against you.

"Mr. Neilson: Well, if your Honor is going to decide on my opening statement, I want to make a very extensive opening statement and comprehensive opening statement.

"The Court: Well, you have about said all that you can say.

"Mr. Neilson: Your Honor, there is a great deal more.

"The Court: I know, all that you are doing is just repeating. Go ahead with your testimony. I will hear that. But I do not think that you have got much of a case."

particular works being constructed by appellees might be related to commerce. The court improperly restricted the testimony to the two levees and one canal here under contract, whereas the Government contended that there was a traceable connection between these works and other parts of the total engineering project which were alleged to be instrumentalities of commerce. While such connection appears on this record to be extremely tenuous, if there is any at all, this may be partly due to the unduly restricted development of the case by appellant. To permit a more adequate development of the case the judgment is reversed and the case remanded for further proceedings which will permit the appellant to offer additional proof, including such as may be relevant to the theory that these works are instrumentalities of commerce.